# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____ )<br>)<br>NORBERT G. KAESS and MARIA )<br>FARRUGGIO, and On Behalf of Themselves and )<br>All Others Similarly Situated, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>DEUTSCHE BANK AG, DEUTSCHE BANK )<br>CAPITAL FUNDING TRUST IX, DEUTSCHE )<br>BANKD CAPITAL FUNDING LLC IX, )<br>DEUTSCHE BANK CAPITAL FUNDING )<br>TRUST X, DEUTSCHE BANK CAPITAL )<br>FUNDING LLC X, JOSEF ACKERMANN, )<br>ANTHONY DI IORIO, HUGO BANZIGER, )<br>HERMANN-JOSEF LAMBERTI, MARTIN )<br>EDELMANN, PETER STURZINGER, MARCO )<br>ZIMMERMANN, RAINER RAULEDER, )<br>JONATHAN BLAKE, TESSEN VON )<br>HEYDEBRECK, UBS SECURITIES LLC, )<br>CITIGROUP GLOBAL MARKETS INC., )<br>MERRILL LYNCH, PIERCE, FENNER & SMITH )<br>INCORPORATED, WACHOVIA CAPITAL )<br>MARKETS, LLC, MORGAN STANLEY & CO. )<br>INCORPORATED, DEUTSCHE BANK )<br>SECURITIES INC. and BANC OF AMERICA )<br>SECURITIES LLC, )<br>)<br>Defendants. )<br>_____ ) | **CIVIL ACTION NO. 09-cv-2556**<br>"ECF Case"<br><br>CLASS ACTION COMPLAINT<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Norbert G. Kaess and Maria Farruggio (collectively "Plaintiffs"), on behalf of themselves and on behalf of all other persons similarly situated (the "Class"), by their attorneys, make the following allegations based upon all the facts set forth below, which were obtained through a detailed investigation made by and through Plaintiffs' counsel. The investigation included, among other things, review of: (i) publicly available news articles and

reports; (ii) public filings including, but not limited to, Deutsche Bank AG ("DB" or the "Company") Securities and Exchange Commission ("SEC") filings and prospectuses; and (iii) press releases issued by Defendants.  Plaintiffs believe that further evidentiary support for the allegations set forth herein shall be provided after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action filed on behalf of: 1) purchasers or acquirers of the 6.625% Noncumulative Trust Preferred Securities of Deutsche Bank Capital Funding Trust IX ("6.625% Securities") pursuant to the Company's public offering in July 2007 (the "6.625% Securities Offering"), and/or 2) purchasers or acquirers of the 7.35% Noncumulative Trust Preferred Securities of Deutsche Bank Capital Funding Trust X ("7.35% Securities") pursuant to the public offering in November 2007 (the 6.625% Securities Offering and 7.35% Securities Offering are referred to collectively as the "Offerings;" the 6.625% Securities and/or 7.35% Securities are referred to collectively as the "Securities").  These claims are brought against DB, certain of its subsidiaries, certain of its officers and directors, and the lead underwriters of the Offerings, (collectively, "Defendants") for violations of the federal securities laws in connection with the Offerings.

2.      This action arises under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§77k, 77*l*, and 77o, which imposes liability on Defendants for failure to draft a registration statement, prospectuses, and accompanying documents that fully and accurately inform investors of all material facts and industry trends affecting DB and its subsidiaries. Defendants are held liable for any material misrepresentations or omissions found in such documents.  Specifically, the documents at

issue in this litigation include:

(a)  a registration statement filed by DB with the SEC on form F-3 on October 10, 2006, amended on July 12, 2007, adding two registrants, Deutsche Bank Capital Funding LLC IX and Deutsche Bank Capital Funding Trust IX (the "July 2007 Registration Statement");

(c)  a registration statement filed by DB with the SEC on form F-3 on October 10, 2006, amended on November 6, 2007, adding two registrants, Deutsche Bank Capital Funding LLC X and Deutsche Bank Capital Funding Trust X (the "November 2007 Registration Statement;" both registration statements are referred to collectively as the "Registration Statements");

(d)  a prospectus dated October 10, 2006 and its supplement, filed by DB with the SEC on or around July 16, 2007, for the July 2007 Offering (the "July 2007 Prospectus;"

(e)  a prospectus dated October 10, 2006 and its supplement, filed by DB with the SEC on or around November 6, 2007, for the November 2007 Offering (the "November 2007 Prospectus;" both prospectuses are referred to collectively as the "Prospectuses"); and

(f)  documents incorporated by reference to the Registration Statements and Prospectuses.

3.    In July of 2007, DB consummated the 6.625% Offering pursuant to a false and misleading July 2007 Registration Statement and Prospectus, selling 40 million 6.625% Securities at $25 per security for proceeds of approximately $1 billion.  The July 2007 Registration Statement and Prospectus incorporated the Company's financial results for 2006

and statements in the Company's 2006 Annual Report on Form 20-F filed with the SEC.

4.    In November 2007, DB consummated the offering of the 7.35% Securities pursuant to a false and misleading November 2007 Registration Statement and Prospectus, selling 32.2 million 7.35% Securities at $25 per share for proceeds of approximately $805 million (including the over-allotment).   The November 2007 Registration Statement and Prospectus incorporated DB's financial results for 2006 and statements in the Company's 2006 Annual Report on Form 20-F filed with the SEC.

5.    The true facts omitted from the Registration Statements and Prospectuses were:

(a)   The Company failed to properly record provisions for credit losses, residential mortgage-backed securities, commercial real estate loans, and exposure to monoline insurers;

(b)   The Company's internal controls were inadequate to prevent it from improperly recording provisions for credit losses, residential mortgage-backed securities, commercial real estate loans, and the Company's exposure to monoline insurers;

(c)   The Company's internal risk management systems were inadequate to limit the Company's exposure to credit trading, equity derivatives, and proprietary equity trading; and

(d)   The Company was not as well-capitalized as represented, and, notwithstanding the billions of dollars raised in the Offerings, the Company would have to raise an additional €10 billion by selling equity in the Company to the German government.

6.    As a result of these misstatements, Plaintiffs suffered serious financial damage, and bring this action to recover such damages incurred thereby as well as the costs and expenses of this litigation, and any further relief as may be just and proper.

### JURISDICTION AND VENUE

7.    The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§77k, 77*l*(a)(2), and 77o.

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22(a) of the Securities Act, 15 U.S.C. §77v(a).

9.    Venue is proper in this Judicial District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. §77v(a), and 28 U.S.C. §1391(b), because many of the alleged acts, transactions, and conduct constituting violations of law, including the issuance and dissemination of materially false and misleading information to the investing public, occurred, at least in part, in this District. Additionally, Defendants reside, maintain their headquarters or conduct substantial business in this District.

10.    In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

### PARTIES

11.    Plaintiffs Norbert G. Kaess and Maria Farruggio acquired the Securities pursuant or traceable to the Offerings as set forth in the attached certification and have been damaged thereby.

**The Company Defendants**

12.    Defendant DB is a global financial services firm with its principal executive offices in Frankfurt am Main, Germany. DB guaranteed the Securities issued in the Offerings.

13.    Defendant Deutsche Bank Capital Funding Trust IX ("DB Trust IX") is a Delaware statutory trust with its principal offices in New York, New York. DB Trust IX was formed for the purpose of issuing 6.625% Securities. DB Trust IX used the proceeds from the July 2007 Offering to buy the Class B preferred securities issued by Deutsche Bank Capital Funding LLC IX.

14.    Defendant Deutsche Bank Capital Funding LLC IX ("DB LLC IX") is a Delaware limited liability company with its principal offices in New York, New York. DB LLC IX issued and sold the Class B preferred securities to DB Trust IX, issued and sold one class A preferred security to DB, and issued and sold the Class A preferred security representing a limited liability company interest in DB LLC IX to DB.

15.    Defendant Deutsche Bank Capital Funding Trust X ("DB Trust X") is a Delaware statutory trust with its principal offices in New Tork, New York. DB Trust X was formed for the purpose of issuing 7.35% Securities. DB Trust X used the proceeds from the November 2007 Offering to buy the Class B preferred securities issued by Deutsche Bank Capital Funding LLC X.

16.    Defendant Deutsche Bank Capital Funding LLC X ("DB LLC X") is a Delaware limited liability company with its principal offices in New York, New York. DB LLC X issued and sold the Class B preferred securities to DB Trust X, issued and sold the Class A preferred security representing a limited liability company interest in DB LLC X to

DB.

**Individual Defendants**

17.    Defendant Josef Ackermann is, and at all relevant times was, Chairman of the Management Board of DB. Ackermann signed both false and misleading Registration Statements.

18.    Defendant Anthony Di Iorio was, at all relevant times, Chief Financial Officer ("CFO") and a member of the Management Board of DB.  Di Iorio retired in September 2008.  Di Iorio signed both false and misleading Registration Statements.

19.    Defendant Hugo Banziger is, and at all relevant times was, Chief Risk Officer and a member of the Management Board of DB.  Banziger signed both false and misleading Registration Statements.

20.    Defendant Hermann-Josef Lamberti is, and at all relevant times was, Chief Operating Officer ("COO") and a member of the Management Board of DB.  Lamberti signed both false and misleading Registration Statements.

21.    Defendant Martin Edelmann is, and at all relevant times was, a Managing Director of DB.  Edelmann signed both false and misleading Registration Statements.

22.    Defendant Peter Sturzinger is, and at all relevant times was, DB's Authorized Representative in the United States.  Sturzinger signed both false and misleading Registration Statements.

23.    Defendant Marco Zimmermann was, at all relevant times, Vice President of DB, DB Trust IX and DB Trust X.  Zimmermann signed both false and misleading Registration Statements.

24.    Defendant Rainer Rauleder was, at all relevant times, Global Head of Capital

Management & Treasurer Europe DB and DB Trust IX. Rauleder signed the false and misleading July 2007 Registration Statement.

25.    Defendant Jonathan Blake was, at all relevant times, a director of DB and Blake signed the false and misleading November 2007 Registration Statement.

26.    Defendant Tessen von Heydebreck was, at all relevant times, Chief Administrative Officer and a member of the Management Board of DB. Von Heydebreck left the Management Board in May 2007. Von Heydebreck signed the false and misleading registration statement filed on October 10, 2006.

27.    Defendants named above in ¶¶ 17-26 are referred to herein as the "Individual Defendants."

**Underwriter Defendants**

28.    Defendant UBS Securities LLC ("UBS") is the U.S. investment banking and securities arm of UBS Investment Bank. UBS Investment Bank provides a range of financial products and services worldwide. UBS acted as an underwriter in connection with both Offerings.

29.    Defendant Citigroup Global Markets Inc. ("Citigroup") is a large integrated financial services institution that through subsidiaries and divisions provides commercial and investment banking services, commercial loans to corporate entities, and acts as underwriter in the sale of corporate securities. Citigroup acted as an underwriter in connection with both Offerings.

30.    Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") provides capital markets services, investment banking and advisory services, wealth management, asset management, insurance, banking and related products and services on a

global basis.  Merrill Lynch acted as an underwriter in connection with both Offerings.

31.    Defendant Wachovia Capital Markets, LLC ("Wachovia Capital") is the corporate and investment banking side of brokerage firm Wachovia Securities (both companies are subsidiaries of banking giant Wachovia).  Wachovia Capital provides financial and corporate advisory services, private capital, debt private placement, mergers and acquisitions advice, underwriting, and equity investing.  It also offers real estate financing, risk management services, and structured products such as asset-backed and mortgage-backed securities.  Wachovia Capital acted as an underwriter in connection with both Offerings.

32.    Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") is a global financial services firm that, through its subsidiaries and affiliates, provides its products and services to customers, including corporations, governments, financial institutions and individuals.  Morgan Stanley assists public and private corporations in raising funds in the capital markets (both equity and debt), as well as in providing strategic advisory services for mergers, acquisitions and other types of financial transactions.  Morgan Stanley acted as an underwriter in connection with both Offerings.

33.    Defendant Deutsche Bank Securities Inc. ("DB Securities") is the investment banking arm of DB.  DB Securities acted as an underwriter in connection with both Offerings.

34.    Defendant Banc of America Securities LLC ("Banc of America") is the investment banking arm of Bank of America. Banc of America offers trading and brokerage services; debt and securities underwriting; debt and equity research; and advice on public offerings, leveraged buyouts, and mergers and acquisitions.  Banc of America acted as an

underwriter in connection with both Offerings.

35.    Defendants referenced in ¶¶ 28-34 above are referred to herein as the "Underwriter Defendants."

36.    Each of the Individual Defendants and each of the Underwriter Defendants participated in the drafting, preparation, or approval of various false and misleading statements contained in the Registration Statements and Prospectuses and/or documents incorporated therein in connection with the Offerings, as complained of herein.  Each of the Defendants was responsible for ensuring the truth and accuracy of the statements contained in these documents.

37.    Each of the Defendants, owed to the purchasers, including Plaintiff and the Class, the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statements and Prospectuses and/or documents incorporated therein at the time of the Offerings.  This duty included performing an appropriate investigation to ensure that the statements contained therein were true, and that there were no omissions of material fact required to be stated in order to make the statements contained therein not misleading.  As herein alleged, each of the Defendants violated these specific duties and obligations.  The Underwriter Defendants are strictly liable for the false and misleading statements in the Registration Statements and Prospectuses.  In connection with the Offerings, the Underwriter Defendants drafted and disseminated the Registration Statements and Prospectuses and were paid fees in connection therewith.  The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## FACTUAL ALLEGATIONS

**Misstatements**

38.    On or about July 12, 2007, DB filed with the SEC an amendment to the Form F-3 Registration Statement filed with the SEC on October 10, 2006 (the "July 2007 Registration Statement").

39.    On or about July 16, 2007, DB filed, pursuant to Rule 424(b)(2) of the Securities Act, a prospectus supplement to prospectus dated October 10, 2006, for the July 2007 Offering (the "July 2007 Prospectus"), which formed part of the July 2007 Registration Statement.

40.    On or about November 6, 2007, DB filed with the SEC an amendment to the Form F-3 Registration Statement filed with the SEC on October 10, 2006 (the "November 2007 Registration Statement").

41.    On or about November 8, 2007, DB filed, pursuant to Rule 424(b)(2) of the Securities Act, a prospectus supplement to prospectus dated October 10, 2006, for the November 2007 Offering (the "November 2007 Prospectus"), which formed part of the November 2007 Registration Statement.

42.    The July and November 2007 Prospectuses incorporated by reference the Form 20-F Annual Report for the year 2006 that DB filed with the SEC on March 23, 2007 (the "2006 20-F"). The 2006 20-F stated in part:

CREDIT RISK RATINGS

A primary element of the credit approval process is a detailed risk assessment of every credit exposure associated with a counterparty. Our risk assessment procedures consider both the creditworthiness of the counterparty and the risks related to the specific type of credit facility or exposure. This risk assessment not only affects the structuring of the transaction and the outcome of the credit decision, but also influences the level of decision-making

11

authority required to extend or materially change the credit and the monitoring procedures we apply to the ongoing exposure.

We have our own in-house assessment methodologies, scorecards and rating scale for evaluating the creditworthiness of our counterparties. Our granular 26-grade rating scale, which is calibrated on a probability of default measure based upon a statistical analysis of historical defaults in our portfolio, enables us to compare our internal ratings with common market practice and ensures comparability between different sub-portfolios of our institution. While we generally rate all our credit exposures individually, at times we rely on rating averages for measuring risk. When we assign our internal risk ratings, we compare them with external risk ratings assigned to our counterparties by the major international rating agencies, where possible.

43.    Regarding market risk specifically, the 2006 20-F stated:

MARKET RISK MANAGEMENT FRAMEWORK

We assume market risk in both our trading and our nontrading activities. We assume risk by making markets and taking positions in debt, equity, foreign exchange, other securities and commodities as well as in equivalent derivatives.

We use a combination of risk sensitivities, value-at-risk, stress testing and economic capital metrics to manage market risks and establish limits. Economic capital is the metric we use to describe and aggregate all our market risks, both in trading and nontrading portfolios. Value-at-risk is a common metric we use in the management of our trading market risks.

Our Management Board and Risk Executive Committee, supported by Market Risk Management, which is part of our independent risk and capital management function, set a Group-wide value-at-risk limit for the market risks in the trading book. Market Risk Management sub-allocates this overall limit to our Group Divisions. Below that, limits are allocated to specific business lines and trading portfolio groups and geographical regions.

Our value-at-risk disclosure for the trading businesses is based on our own internal value-at-risk model. In October 1998, the German Banking Supervisory Authority (now the BaFin) approved our internal value-at-risk model for calculating the market risk capital for our general and specific market risks. Since then the model has been periodically reviewed and approval has been maintained.

Our value-at-risk disclosure is intended to ensure consistency of market risk reporting for internal risk management, for external disclosure and for regulatory purposes.

44.    On or about July 20, 2007, Defendants sold at least 40 million 6.625% Securities to the public at $25.00 per security pursuant to the July 2007 Registration Statement and Prospectus.

45.    On or about November 15, 2007, Defendants sold at least 32.2 million 7.35% Securities to the public at $25.00 per security pursuant to the November 2007 Registration Statement and Prospectus.

46.    The Registration Statements and Prospectuses contained untrue statements of material fact or omitted to state other facts necessary to make the statements made therein not misleading and was not prepared in accordance with applicable SEC rules and regulations.

47.    The true facts which were omitted from the Registration Statements and Prospectuses were:

(a)    The Company failed to properly record provisions for credit losses, residential mortgage-backed securities, commercial real estate loans, and exposure to monoline insurers;

(b) The Company's internal controls were inadequate to prevent it from improperly recording provisions for credit losses, residential mortgage-backed securities, commercial real estate loans, and the Company's exposure to monoline insurers;

(c) The Company's internal risk management systems were inadequate to limit the Company's exposure to credit trading, equity derivatives, and proprietary equity trading; and

(d) The Company was not as well capitalized as represented, and, notwithstanding the billions of dollars raised in the July 2007 Offering, the Company

would have to raise an additional EUR10 billion by selling equity in the Company to the German government.

**The Truth Is Revealed**

48.    On January 14, 2009, DB issued a press release entitled "Deutsche Bank provides update on fourth quarter 2008 performance," which stated in part:

> Deutsche Bank (XETRA:DBKGn.DE/NYSE:DB) today announced, on a preliminary and unaudited basis, key elements of its fourth quarter 2008 financial performance:

> - **Fourth-quarter loss:** The bank currently anticipates a loss after taxes in the region of EUR 4.8 billion for the fourth quarter 2008. This development reflects exceptional market conditions, which severely impacted results in the sales and trading businesses, most notably in Credit Trading including its proprietary trading business, Equity Derivatives and Equities Proprietary Trading. The result also reflects exposure reduction and other de-risking measures, a significant increase in provisions against certain of our monoline counterparties, and certain other exceptional gains and charges, including reorganisation charges. In Asset and Wealth Management, the bank anticipates a fourth quarter loss driven by an impairment charge on intangible assets related to DWS Scudder and substantial injections into money market funds.

> *    *    *

> Dr. Josef Ackermann, Chairman of the Management Board, said: "We are very disappointed at this fourth quarter result, which leads to a loss for the year. The exceptionally difficult market environment of the quarter exposed some weaknesses in our platform, and we have determined a number of measures to address these weaknesses. Implementation of these measures is already underway."

49.    On this news, the prices of the Securities dropped significantly.

50.    On February 5, 2009, the Company issued a press release entitled "Deutsche Bank reports net loss of EUR 3.9 billion for the year 2008," which stated in part:

> For the fourth quarter 2008, the bank reported a net loss of EUR 4.8 billion, compared to net income of EUR 1.0 billion in the fourth quarter 2007. The bank reported a loss before income taxes of EUR 6.2 billion, versus

income before income taxes of EUR 1.4 billion in the prior year quarter.

\*　\*　\*

In the Corporate and Investment Bank (CIB), net revenues were EUR 3.0 billion negative, versus EUR 4.5 billion positive in the fourth quarter 2007.

In Corporate Banking & Securities (CB&S), net revenues were EUR 3.8 billion negative in the fourth quarter, versus EUR 3.8 billion positive in the fourth quarter 2007. This development reflects negative revenues of EUR 4.8 billion in Sales & Trading, driven by significant losses in key businesses: Credit Trading (both proprietary and customer), Equity Derivatives, and Equity Proprietary Trading. These losses reflect the impact on Deutsche Bank's business model of unprecedented levels of market volatility, correlation across asset classes, and the breakdown of historically observed relationships between asset classes, compounded by extreme illiquidity, in an exceptionally turbulent market environment.

\*　\*　\*

Provision for credit losses was EUR 591 million in the fourth quarter, up 80% versus the fourth quarter 2007, and including EUR 185 million of provisions in respect of loans reclassified in accordance with amendments to IAS 39. In CIB, provision for credit losses was EUR 361 million, up 90% versus the prior year quarter, primarily reflecting provisions in respect of reclassified loans. In PCAM, provision for credit losses was EUR 229 million, up 68%, primarily in PBC reflecting a rise in provision against the backdrop of a deteriorating credit environment and business growth.

\*　\*　\*

Corporate Banking & Securities (CB&S)

Deutsche Bank's Sales & Trading businesses were severely impacted by the unprecedented market turmoil that started in September and continued to deteriorate in the fourth quarter. Many market participants, including hedge funds, were forced to liquidate substantial positions in assets such as convertibles, investment-grade and high-yield bonds, default swaps, and in long-short equity strategies. These actions drove higher volatilities and correlations in all markets and a significant dislocation in the relationship (or basis) between trading positions and their hedges.

In this challenging environment, Deutsche Bank continued to suffer significant losses in the Credit Trading business, including Credit Proprietary Trading, and Equity Proprietary Trading (EFT) books. Proprietary positions were significantly reduced in size, although market liquidity was not sufficient

to eliminate risk in all cases and the bank retains some potential exposure to any further deterioration in these positions.

Sales & Trading (Debt and other products) revenues were negative EUR 2.7 billion in the fourth quarter 2008, compared to positive EUR 1.6 billion in the fourth quarter 2007.

The fourth quarter 2008 included losses in Credit Trading of EUR 3.4 billion, of which EUR 1.0 billion related to the Credit Proprietary Trading business. The losses in the Credit Proprietary Trading business were mainly driven by losses on long positions in the U.S. Automotive sector and by falling corporate and convertible bond prices and basis widening versus the Credit Default Swaps (CDS) established to hedge them. The remaining losses in the Credit Trading business were driven across many sectors as bonds were sold off and basis spreads widened, driven by significant market dc-leveraging and low levels of liquidity.

Further mark-downs of EUR 1.7 billion were taken relating to additional reserves against monoline insurers (EUR 1.1 billion), driven in part by additional specific reserves related to certain insurers, and additional provisions against residential mortgage-backed securities (EUR 244 million), commercial real estate loans (EUR 214 million), and impairment losses on available for sale positions (EUR 58 million).

\* \* \*

Sales & Trading (Equity) revenues were negative EUR 2.1 billion in the fourth quarter 2008, compared to positive EUR 1.1 billion in the same quarter 2007. In an environment characterized by severely dislocated equity markets, with unprecedented levels of volatility and very low levels of liquidity, Equity Derivatives incurred losses of EUR 1.7 billion from managing structural risks, particularly around correlation, volatility and dividend risk related to single stocks. Equity Proprietary Trading losses of' EUR 413 million were driven by market-wide de-leveraging which drove down convertible values and widened basis risk.

\* \* \*

Asset and Wealth Management (AWM)

\* \* \*

Noninterest expenses in the fourth quarter 2008 were EUR 1.5 billion, an increase of 56%, or EUR 520 million, compared to the same quarter in 2007. The increase was primarily due to an impairment of EUR 302 million on DWS Scudder intangible assets (compared to EUR 74 million in the fourth

quarter 2007) and a goodwill impairment of EUR 270 million in a consolidated investment.

(Emphasis in original).

51.    On February 5, 2009, on the Company's Q4 2008 and preliminary 2008 earnings conference call, defendant Ackermann made the following statements:

But we use the leverage ratio as a benchmark just to demonstrate that we take the assets serious, and have of course, contrary than what we did in the past, in the last six months very, very much focused on granular trading and balance sheet positions, and that is what we want to demonstrate.

\* \* \*

The focus was on getting a 10% and getting the leverage ratio down and, of course, getting risk down that we start on a different platform into 2009.

\* \* \*

[I]n the fourth quarter, after Lehman, things happen which really got to the franchise, to the core of our sales and trading business and that is primarily all this indirect risk, not the directional risk, we didn't have directional risk. That's why we were relatively strong for a long time.

But we had basis risk, we had correlation risk and so on, so on. And that is really what's got us into this difficult situation in the fourth quarter.

\* \* \*

[T]here were two areas, prop trading where relative value strategy suffered from all that I just said, and our assumptions were wrong in this very difficult market.

Some would argue they come back and make a lot of money, it may well be. But we had a different approach we said we just can't afford that. So we get rid of it, we take the losses and want to have - start from a new platform, even if in five years from now someone says opportunity costs would have been pretty important.

The second one is scale. We have been too big, and that is something we have to work down and we will work on that, that's fine. We came down in non-derivative trading assets from EUR460b some time ago to slightly over EUR200b, and we will have a further cut in the first quarter of this year. We

want to get the kind of exposure down so whatever happens we cannot have similar volatilities on our P&L.

And the last point is complexity what I said with intellectual leadership, and so we had exposure to volatility and correlation risk. Also something we have to control and monitor better.

52.    On the same call, Ackermann further stated:

I think we told you many, many times that our prop trading is about 10% to 15% of our revenues. And we also felt that a relatively modest number.

But in order to, if you take 10% out of EUR15b it's only EUR 1.5b. But to achieve EUR1.5b you need actually a risk allocation and a risk equivalent and capital equivalent of several times more. So let's assume it's a 20% return you need five times more so you talk about EUR7b to EUR8b.

And if you have swings, as we had, on this EUR8b you can easily lose EUR2b, EUR3b. And that is what we have seen in 2008, and something we don't want to see again.

*   *   *

[W]e are reducing to a minimum the highly illiquid positions. And we have closed our exclusively dedicated prop trading desks.

*   *   *

So the proprietary trading risk has been reduced by 90%. Then we have reduced our RMBS exposures to 50%.

*   *   *

Lehman came and changed the whole picture within hours. And then you couldn't move. And it shows us (inaudible) what was the most difficult part in the fourth quarter. The difficult was [sic] that you were stuck with positions you couldn't liquidate and you just saw how much value they lost every day. And normally I'm very eager to see P&L. I tell you, before Christmas, I stopped looking at it. It just was awful, every day you lost such and such much. And you couldn't move any more.

53.    The February 5, 2009 conference call also included the following colloquy

with investments analysts:

Matthew Clark - Keefe, Bruyette & Woods – Analyst

Do you think you can continue to have the pretty market share of the equity derivatives market going forward if you do charge your clients more in order to compensate yourselves a bit better for the risk there?

\* \* \*

Stefan Krause -- Deutsche Bank -CFO

\* \* \*

So one of our conclusions is not only that we were too complex and didn't have enough reserves, one conclusion is we did too much volume-wise, and that's what we're going to reduce.

## CLASS ACTION ALLEGATIONS

54.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons who purchased or otherwise acquired the Securities pursuant or traceable to the Company's false and misleading Registration Statements and Prospectuses issued in connection with the Company's Offerings, and who were damaged thereby, seeking to pursue remedies under the Securities Act. Excluded from the Class are Defendants, the officers and directors of any Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest.

55.    The members of the Class are so numerous that joinder of all members is impracticable. The Securities were actively traded on the New York Stock Exchange ("NYSE"). While the exact number of the members of the Class is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by DB or its transfer agent

and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

56.    Plaintiffs' claims are typical of the claims of the other Class members as all Class members are similarly affected by Defendants' illegal conduct that is complained of herein.

57.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

58.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)  whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)  whether the Registration Statements and Prospectuses or documents incorporated by reference therein contained material misrepresentations or omissions of material fact; and

(c)  whether Defendants' acts caused damages to Plaintiffs and other members of the Class, and the proper measure of such damages.

59.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violations of § 11 of the Securities Act
### (Against All Defendants)

60.    Plaintiffs repeat and reallege each and every allegation contained above.

61.    This Count is brought pursuant to § 1l of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

62.    The Registration Statements and Prospectuses were false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

63.    DB, DB Trust IX and X, and DB LLC IX and X were the registrants for the Offerings.  As issuer of the Securities, DB, DB Trust IX and X, and DB LLC IX and X are strictly liable to Plaintiffs and the Class for the misstatements and omissions.

64.    The Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statements and Prospectuses.  Each of the Individual Defendants signed or authorized the signing of the Registration Statements and Prospectuses. None of Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statements and Prospectuses were true and without omissions of any material facts and were not misleading.

65.    By reason of the conduct herein alleged, each defendant violated § 11 of the Securities Act.

66.    Plaintiffs acquired the Securities pursuant and/or traceable to the Registration Statements and Prospectuses.

67.    Plaintiffs and the Class have sustained damages.   At the time of their

purchases of the Securities, Plaintiffs and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to January 2009. Less than one year has elapsed from the time that Plaintiffs discovered or reasonably could have discovered the facts upon which this complaint is based to the time that Plaintiffs filed this complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiffs filed this complaint.

**COUNT II**

**Violations of § 12(a)(2) of the Securities Act**
**(Against Defendants DB Trust IX, DB LLC IX,**
**DB Trust X, DB LLC X and the Underwriter Defendants)**

68.    Plaintiffs repeat and reallege the allegations set forth above as if set forth fully herein.

69.    By means of the defective Prospectuses, Defendants named herein assisted in the sale of the Securities to Plaintiffs and other members of the Class.

70.    The Prospectuses contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants named in this Count owed Plaintiffs and the other members of the Class who purchased the Securities pursuant to the Prospectuses the duty to make a reasonable and diligent investigation of the statements contained in the Prospectuses to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectuses as set forth above.

71.    Plaintiffs did not know, nor in the exercise of reasonable diligence could have

known, of the untruths and omissions contained in the Prospectuses at the time Plaintiffs acquired the Securities.

72.    By reason of the conduct alleged herein, these Defendants violated § 12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, Plaintiffs and the other members of the Class who purchased the Securities pursuant to the Prospectuses sustained substantial damages in connection with their purchases of the Securities. Accordingly, Plaintiffs and the other members of the Class who hold such Securities have the right to rescind and recover the consideration paid for their Securities, and hereby tender their Securities to Defendants sued herein.  Class members who have sold their Securities seek damages to the extent permitted by law.

## COUNT III

### Pursuant to § 15 of the Securities Act
### (Against the Individual Defendants)

73.    Plaintiffs repeat and reallege each and every allegation contained above.

74.    This Count is brought pursuant to § 15 of the Securities Act against the Individual Defendants.

75.    Each of the Individual Defendants was a control person of DB by virtue of his position as a director, senior officer, and/or major shareholders of DB which allowed each of these Defendants to exercise control over DB and its operations.

76.    Each of the Individual Defendants was a culpable participant in the violations of § 11 of the Securities Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statements and Prospectuses and having otherwise participated in the process which allowed the Offerings to be successfully completed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A.      Determining that this action is a proper class action and certifying Plaintiffs as Class representatives;

B.      Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Such equitable/injunctive or other relief as deemed appropriate by the Court.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

DATED: March 19, 2009

MURRAY, FRANK & SAILER LLP

By:      _____S/_____
     Brian P. Murray (BM 9954)
     bmurray@murrayfrank.com
Eva Hromadkova (EH 0827)
evah@murrayfrank.com
275 Madison Avenue, 8th Floor
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

*Counsel for Plaintiffs*

## PLAINTIFFS' CERTIFICATION

We, Norbert G. Kaess and Maria G. Farruggio, do hereby certify that:

1. We have reviewed the complaint and have authorized its filing.

2. We purchased securities of **Deutsche Bank Capital Funding Trust IX and X**, which are the subject of the complaint, *but not* at the direction of my counsel or in order to participate in any private action arising under the Securities Act of 1933 or Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995.

3. We are willing to serve as representative parties on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the three year period prior to the date of this certification, we have not sought to serve or served as representative parties on behalf of a class in an action brought under the federal securities laws.

5. During the Class Period, we engaged in the following transactions in the securities, which are the subject of the complaint:

6.625% Noncumulative Trust Preferred Securities of
Deutsche Bank Capital Funding Trust IX

| BUY OR SELL | TRADE DATE | NO. OF SECURITIES | PRICE PER SECURITY |
|---|---|---|---|
| BUY | 07/13/07 | 12,000 | $25.00 |

7.35% Noncumulative Trust Preferred Securities of
Deutsche Bank Capital Funding Trust X

| BUY OR SELL | TRADE DATE | NO. OF SECURITIES | PRICE PER SECURITY |
|---|---|---|---|
| BUY | 11/07/07 | 7,000 | $25.00 |

6. We will not accept any payment for serving as representative parties on behalf of the Class beyond my *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class and our activities in the lawsuit, as ordered or approved by the Court.

7. Nothing herein shall be construed to be or constitute a waiver of our attorney-client privilege.

8. We certify under penalty of perjury that the foregoing is true and correct.

Executed on March 17, 2009.          Signature: _____
                                                Norbert G. Kaess

                                      Signature: _____
                                                Maria G. Farruggio